THE STATE OF OHIO *v.* BROWNING.

[Cite as State v. Browning, 9 Ohio Misc. 228.]

(No. 19813—Decided January 21, 1967.)

*Mr. William J. Curry,* for affiant.

BROWN (Presiding Judge of the Court of Appeals for Lawrence County). The attorney for the defendant filed an affidavit under Section 2701.03 of the Revised Code against Warren S. Earhart, Judge of the Common Pleas Court of Lawrence County. The defendant is charged with the murder of Walter Eugene Markel, the then Chief of Police of the city of Ironton. The affidavit states two substantial allegations as to that judge's qualification to hear this case:

1. That a fund has been caused to exist by reason of the death of Walter Eugene Markel, from voluntary contributions being made, that one of the administrators of the fund is Warren S. Earhart, the judge presiding in this case, and that he is interested in and has taken an active part by reason of his sympathies to, with and for the cause for which the fund has been established; and

2. That the Fraternal Order of Police of the city of Ironton had an open memorial meeting for Mr. Markel and that Judge Earhart, as an invitee, attended the meeting and permitted himself to be photographed in attendance thereat.

On January 17, 1967 a hearing was held on this affidavit, pursuant to statute, no denial or other pleading having been filed by the judge of the court to whom it was directed. The sole witness called by the attorney for the defendant was that judge. He admitted the substance of the two essential allegations of the affidavit. He further admitted that he was an intimate friend of the deceased, wept at the funeral, and served as an honorary pallbearer.

I am of the opinion that the second charge in the affidavit, of attending a memorial meeting on behalf of the decedent, and the fact that he was photographed, would inevitably happen in a community of 16,000 such as the city of Ironton, and is not a sufficient ground to warrant any finding of disqualification against any judge. Even if these two people were not friends, the nature of their offices was such that common courtesy and human sympathy would require the attendance of the Common Pleas Court Judge at such an occasion. The fact of photography gets me into the "never, never land" of free trial and free press. I will ignore it.

It is the first of the allegations in the affidavit that concerns

this judge. The Common Pleas Court Judge involved is placed in a difficult position. He, of course, is better able than any one else to know in his own mind whether he has bias, prejudice and interest, or is otherwise disqualified, so as to prevent a fair and impartial trial. On being asked questions to this general effect by counsel for defendant and this court, the Common Pleas Court Judge kept evading the same, stood on his elected position and left the burden of the final decision to me. This, of course, is a subjective problem and one which a judge, being human, hates to face up to. On the one hand he has taken his oath of office and has devoted his life and integrity to carrying out his elected duties. He has continually and conscientiously carried out his duties effectively because I can take judicial notice that he is re-elected without opposition and I have reviewed his decisions for six years. However, does this judge have the right to judge someone when he is trustee for the family of the deceased? Remember, it is well-recognized in trial court circles that the mere filing of an affidavit often intensifies the feeling of the judge against the person who originates it. Such a charge is not complimentary, is felt by the recipient to be derogatory and generally reflects on the strength of the character of the trial judge. Can a judge, being human, ignore such a charge? Lest I forget, there are upwards of 150 Common Pleas Court Judges in the state of Ohio, each of whom has the elected qualifications to decide this particular case. Our law provides for assignments of these judges to other counties in this state.

While I recognize the integrity of the present Common Pleas Court Judge of Lawrence County, I am of the opinion that his action in accepting the trusteeship on behalf of the family of the deceased was such a step that might eventually make reversible error in this trial if he tried the case. I must keep in mind that it is the defendant, under Anglo-Saxon and Ohio Jurisprudence, who is entitled to a fair trial. It is he who is on trial for his life and not this judge's status in the community. That ultimate fact must be my guideline.

Allen, J., stated in *State, ex rel. Turner, v. Marshall, Chief Justice* (1931), 123 Ohio St. 586, 587, "It is of vital importance that the litigant should believe that he will have a fair

trial." The Fourteenth Amendment to the United States Constitution, which guarantees due process of law to an accused, applies to the state of Ohio, and every person charged with a crime by the state is entitled to a fair trial, not only by that document, but by the Constitution of Ohio.

In 1955, in *In re Murchison*, 349 U. S. 133, 136, the Supreme Court had this to say about a fair trial: "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the state and the accused, denies the latter due process of law.' " *Tumey* v. *Ohio*, 373 U. S. 510, 532.

Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt* v. *United States*, 348 U. S. 11, 14.

I am particularly impressed by the statement in *Offutt* v. *United States*, that "justice must satisfy the appearance of justice." If for no other reason, I must make a positive finding for the affiant. Is it probable that the trustee of a family fund would not have some prejudice in presiding at the trial of the person accused of the death of the man for whom the trust was established? Is it possible that, because of that fact, a jury could be prejudiced in favor of the defendant?

Keeping in mind that "justice must satisfy the appearance of justice" and that a litigant shall believe he will have a fair trial, is not this judge disqualified to sit in this case? Could any person being so tried "believe he had a fair trial."

I announced from the bench when I heard this case that there is a presumption of the trial judge's impartiality, and I

believe this to be true. I believe that I can take judicial notice that this is a very conscientious and courageous judge. He always has been. I attempted to ask him from the bench the substance of what I have quoted above, and he did not wish to answer, leaving it for this court to determine. I did not press him for a positive answer as he might have another in the actual trial of a case.

As far as my research and experience goes, it is the universal and accepted practice for judges to automatically disqualify themselves when an affidavit of bias, prejudice of interest has been filed, particularly if a substantial reason is advanced. Often this is accomplished by the mere suggestion to a judge. The law favors this practice. This is all the more important in a case where a man's life may be at stake. It is my mission, if I can, to protect the integrity of the judicial process against any suspicion as to the fairness of a judge in order that the public will have confidence in the integrity and fairness of the courts.

As was said in *Haslam* v. *Morrison*, J., 113 Utah 14, 20, 190 P. 2d 520, 523; " 'Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.' "

In view of this judge's acceptance of the trusteeship, his reluctance to answer my questions as to his capacity to provide a fair trial, and the spirit of the above quoted law, I have no alternative but to determine that the evidence is sufficient to overcome the presumption of impartiality.

Accordingly, I find Warren S. Earhart, Judge of the Court of Common Pleas of Lawrence County, is disqualified in the above captioned case, and, pursuant to statute, I shall forthwith notify the Chief Justice of the Supreme Court.

*Judge disqualified.*