IN RE DISQUALIFICATION OF FLOYD.

IN RE D.Z.

[Cite as *In re Disqualification of Floyd,*
101 Ohio St.3d 1215, 2003-Ohio-7354.]

(No. 03–AP–001—Decided July 23, 2003.)

MOYER, C.J.

{¶ 1} This affidavit of disqualification was filed by Colleen M. O'Toole, counsel for the minor D.Z., seeking the disqualification of Judge Alison Floyd from further proceedings in the above-captioned case.

{¶ 2} The underlying case is a delinquency proceeding in which the juvenile is accused of 27 counts of rape against a younger sister and cousins. Affiant represents the juvenile in those proceedings, represents the juvenile's father in a neglect and dependency proceeding arising from these same incidents, and represents the juvenile in a domestic violence action involving the same sister.

{¶ 3} The gist of the affidavit is that Judge Floyd is refusing to allow affiant to represent the juvenile in the delinquency matter, and had counsel appointed for him, even though the juvenile and his father desire affiant's representation. Affiant states that on December 24, 2002, Judge Floyd called her office and in this ex parte discussion told affiant "to remove yourself from this case," that "you picked the father [S.Z.], as your client, so it's too bad," that she would deny any motion filed by affiant, and that she would refuse to issue a journal entry or hold a hearing on the issue.

{¶ 4} In her response, Judge Floyd claims that there is an obvious conflict of interest in affiant's representing the juvenile in a delinquency proceeding and representing the father in a dependency proceeding arising from the same set of facts, and that it is her obligation as the trial judge not to permit this conflict. Judge Floyd did not address, and therefore did not deny, initiating the ex parte conversation with affiant and the statements attributed to her by the affiant.

{¶ 5} Judge Floyd is correct in asserting, as she does in her response, that "[a] trial court has wide discretion in the exercise of its duty to supervise members of the bar appearing before it." *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 35, 27 OBR 447, 501 N.E.2d 617. Judge Floyd also correctly refers to *Columbus Credit Co. v. Evans* (1992), 82 Ohio App.3d 798, 803, 613 N.E.2d 671, in support of her position. ("It is well established that trial courts wield wide discretionary power in supervising the practice of law in those courts. The authority possessed by a common pleas court includes the duty to oversee the ethical performance of the attorney-client relationship.") In both of the cited cases, motions to disqualify counsel were filed, and the trial courts conducted hearings before ruling. But in the instant case, the record before me does not indicate that a motion to disqualify affiant was filed or that a hearing was conducted.

{¶ 6} The judge's concern that there may be an impermissible conflict of interest is a legitimate issue worthy of the trial court's attention. Of equal concern, however, is the trial judge's apparent ex parte call to the affiant. As stated in *In re Disqualification of O'Farrell* (2001), 94 Ohio St.3d 1226, 1227, 763 N.E.2d 597:

{¶ 7} "Where a party seeks the disqualification of a judge based on allegations that the judge engaged in an ex parte communication, the question is whether the alleged communication demonstrates a bias or prejudice on the part of the judge. To satisfy this test, the communications must have been initiated by the judge or address substantive matters in the case. See *In re Disqualification of Aurelius* (1996), 77 Ohio St.3d 1254, 674 N.E.2d 362. Moreover, the allegations must be substantiated and consist of something more than hearsay or speculation. *In re Disqualification of Cacioppo* (1996), 77 Ohio St.3d 1245, 674 N.E.2d 356."

{¶ 8} In this proceeding before me, the affiant, a lawyer and officer of the court, submitted a sworn affidavit alleging that Judge Floyd initiated an ex parte conversation with her that included discussion of substantive matters. The affiant's sworn statement is not refuted by the judge, which makes it "more than hearsay or speculation." *O'Farrell*, 94 Ohio St.3d at 1227, 763 N.E.2d 597.

{¶ 9} While the record before me may not lead to a finding of actual bias or prejudice, I do find that the initiation of the ex parte discussion and the statements sworn to by the affiant, and unchallenged by the judge, could suggest

to a reasonable person the appearance of impropriety. " 'Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.' " *State v. Browning* (1967), 9 Ohio Misc. 228, 232, 38 O.O.2d 401, 224 N.E.2d 398 (Lawrence Cty. C.P.), quoting *Haslam v. Morrison* (1948), 113 Utah 14, 20, 190 P.2d 520.

{¶ 10} Therefore, to avoid even an appearance of bias, prejudice, or impropriety, and to ensure the parties, their counsel, and the public the unquestioned neutrality of an impartial judge, it is ordered that Judge Floyd participate no further in these proceedings. The case is returned to the Administrative Judge of the Cuyahoga County Juvenile Court for reassignment to another judge of that court.